UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE HARPER,

      Petitioner,

                              CASE NO. 05-CV-74413-DT
v.                             JUDGE ROBERT H. CLELAND
                              MAGISTRATE JUDGE PAUL J. KOMIVES

ANDREW JACKSON,

      Respondent.
                       /

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.     RECOMMENDATION ............................................................... 1
II.    REPORT ............................................................................ 1
     A.    *Procedural History* ............................................................ 1
     B.    *Factual Background and the State Court Proceedings* ................................. 4
     C.    *Standard of Review* ............................................................ 8
     D.    *Ineffective Assistance of Counsel (Claims I-IV)* ..................................... 10
          1.    *Clearly Established Law* .................................................. 11
          2.    *Failures Regarding Alibi Witnesses (Claims I & II)* ......................... 12
          3.    *Introduction of Polygraph Evidence (Claim III)* ............................. 14
          4.    *Failure to Object to Bad Acts Evidence (Claim IV)* .......................... 16
     E.    *Evidentiary Claim (Claim V)* ................................................... 16
          1.    *Clearly Established Law* .................................................. 16
          2.    *Analysis* ................................................................ 17
     F.    *Conclusion* .................................................................. 18
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ...................................... 18

\*    \*    \*    \*    \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.    *Procedural History*

       1.     Petitioner Dale Harper is a state prisoner, currently confined at the Mound

Correctional Facility in Detroit, Michigan.

2. On July 26, 2000, petitioner was convicted of one count of second degree murder, MICH. COMP. LAWS § 750.317; and one count of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, following a bench trial in the Wayne County Circuit Court. On September 15, 2000, he was sentenced to a term of 30-60 years' imprisonment on the murder conviction, and to a concurrent term of 5-10 years' imprisonment on the assault conviction.

3. Petitioner filed a motion for new trial in the trial court, arguing that trial counsel was ineffective for failing to property notice his alibi witnesses, introducing evidence of a failed polygraph examination, and failing to object to bad act evidence. After conducting an evidentiary hearing, the trial court denied the motion on May 7, 2001. *See People v. Harper*, No. 99-12336 (Wayne County, Mich. Cir. Ct. May 7, 2001).

4. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I. DEFENDANT HARPER WAS DENIED HIS CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS, WHEN THE *GINTHER* HEARING AND TRIAL RECORD ESTABLISHED THAT HIS ATTORNEY FAILED TO FILE AN APPROPRIATE NOTICE OF ALIBI DEFENSE, WHICH PROMPTED THE TRIAL JUDGE TO EXCLUDE THE TESTIMONY OF SEVERAL ALIBI WITNESSES, INTRODUCED INADMISSIBLE EVIDENCE THAT MR. HARPER FAILED A POLYGRAPH TEST, AND FAILED TO OBJECT TO THE PROSECUTOR'S INTRODUCTION OF BAD ACT EVIDENCE CONCERNING THE DEFENDANTS' DRUG DEALING ACTIVITIES.
>
> II. DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THE TRIAL JUDGE ERRONEOUSLY CONCLUDED THAT SHE HAD NO DISCRETION IN DETERMINING WHETHER DEFENSE COUNSEL COULD CALL ALIBI WITNESSES AT TRIAL, NOTWITHSTANDING HIS FAILURE TO COMPLY WITH THE ALIBI WITNESS NOTICE

>     REQUIREMENT OF MCL 768.20.
>
> III. THE TRIAL COURT ERRED REVERSIBLY BY ALLOWING THE ADMISSION OF PREJUDICIAL PRIOR ACTS TESTIMONY CONCERNING DEFENDANT'S ACTIVITIES CONCERNING THE SELLING OF DRUGS, WHERE DEFENDANT WAS BEING TRIED FOR CRIMES UNRELATED TO ALLEGED DRUG SALES ACTIVITIES.
>
> IV. THE COURT VIOLATED MR. HARPER'S DUE PROCESS RIGHTS BY PERMITTING THE PROSECUTOR TO INTRODUCE EVIDENCE OF THIRD-PARTY THREATS AGAINST THE MAIN PROSECUTION EYEWITNESS AND ALLEGED ASSAULTS AGAINST A MEMBER OF HIS FAMILY, WHERE THE PROSECUTOR FAILED TO ESTABLISH THAT MR. HARPER OR ANYONE ASSOCIATED WITH HIM HAD ANYTHING TO DO WITH THE THREATS OR ALLEGED ASSAULT.
>
> V. THE PROSECUTOR'S INTRODUCTION INTO EVIDENCE [OF] AN ASSAULT RIFLE, BULLETS, AND A BAG OF MARIJUANA, WITHOUT A PROPER FOUNDATION TO TIE EITHER PIECE OF EVIDENCE TO THE KILLING, WAS REVERSIBLE ERROR, AND DENIED THE DEFENDANT DUE PROCESS OF LAW.
>
> VI. DEFENDANT HARPER'S CONVICTION MUST BE REVERSED BECAUSE THE COURT'S VERDICT OF GUILTY OF THE MURDER CHARGE AND NOT GUILTY OF THE FELONY FIREARM CHARGE ARE IMPERMISSIBLY INCONSISTENT VERDICTS.

The court of appeals concluded that trial counsel was ineffective for failing to file a proper notice of alibi witnesses, and therefore reversed petitioner's conviction. The court of appeals did not address petitioner's remaining claims. *See People v. Harper*, No. 230717, 2003 WL 21299927 (Mich. Ct. App. June 5, 2003) (per curiam) ("*Harper I*").

5. The prosecutor sought leave to appeal in the Michigan Supreme Court. In lieu of granting leave to appeal, the Supreme Court summarily reversed, concluding that petitioner had failed to demonstrate that he was prejudiced by counsel's failure to file a proper alibi notice. The court remanded the matter to the court of appeals for consideration of the remaining issues raised by petitioner. *See People v. Harper*, 469 Mich. 978, 673 N.W.2d 752 (2003) ("*Harper II*").

3

6. On remand, the court of appeals found no merit to petitioner's other appellate issues, and affirmed his conviction and sentence. *See People v. Harper*, No. 230717, 2004 WL 1335834 (Mich. Ct. App. June 15, 2004) (per curiam) ("*Harper III*").

7. Petitioner sought leave to appeal in the Michigan Supreme Court, raising the same claims that he raised in the court of appeals. The Supreme Court denied leave to appeal in a standard order. *See People v. Harper*, 471 Mich. 953, 690 N.W.2d 109 (2004).

8. Petitioner, through counsel, filed the instant application for a writ of habeas corpus on November 18, 2005. As grounds for the writ of habeas corpus, he raises the claims he raised in state court, with the exception of the claims relating to the introduction of the rifle and marijuana and the sufficiency of the evidence.

9. Respondent filed his answer on June 13, 2006. He contends that petitioner's claims are without merit.

10. Petitioner filed a reply to respondent's answer on July 28, 2006.

B.  *Factual Background and the State Court Proceedings*

The factual background underlying petitioner's conviction was accurately summarized by the Michigan Court of Appeals:

> Defendant's convictions arise from his alleged involvement in a drive-by shooting in which Toriano Collins was killed, in front of a then-vacant but former drug house at 232 South Military Street in southwest Detroit. A second person, Robert Madden, was present with Collins; a bullet struck his coat zipper and he avoided injury. There was no physical evidence linking Harper or codefendant [Keith] Tate to the incident. The weapon that killed Collins was never found. Madden was the sole eyewitness to testify at trial. At trial, he identified codefendant Tate as having been the drive-by shooter and seated in the front passenger seat of the vehicle involved. Madden testified at the preliminary examination and at trial that he did not see the driver of the car at all.
> On the evening of the shooting, Madden told police that Collins sold drugs, that a drug deal had just gone down when the shooting occurred, that there were a

4

lot of people around when the shooting occurred, and that the green Ford Tempo from which the shots were fired was the same green Ford Tempo he had seen at a drug house on South Dragoon Street. At trial, Madden, who testified he had been an auto mechanic for over twenty-five years, testified for the first time that the vehicle involved in the drive-by shooting was a Geo Metro (a Chevrolet), and not a Ford Tempo. Madden also testified at trial that there were no other persons around when the shooting occurred. Further, during a taped interview, which was admitted and excerpts of which were played at trial, Madden repeatedly stated to defense counsel that Tate was not the shooter and that he, Madden, was put up to stating that he was by the police and police harassment.

Defendant Harper was held by the police for several days before he made a statement incriminating himself. Defendant's initial statements to the police, on the evening of November 22, 1999 and the following day, denied involvement in the drive-by shooting and explained that he was with friends at a house at 1211 Lewerenz Street on the day and evening of the shooting, November 21, 1999. Harper gave the police the names of the friends he was with on Lewerenz Street. The following day, November 23, 1999, Sgt. Lovier, the officer in charge of the case, questioned Harper and he again denied involvement in the incident. Sgt. Lovier testified that he then questioned defendant again because he had "received information," in the interim. On November 24, 1999, beginning at around 11:45 p.m., Sgt. Lovier took a statement from defendant, a process which Lovier testified lasted until 1:30 a.m., after reading him his rights and getting his initials on the waiver form.

Sgt. Lovier testified at trial that defendant had given him the names of the persons he was with on the evening in question at the Lewerenz house, but that he (Lovier) did not contact any of them. Lovier admitted that defendant was not permitted to make any phone calls, and testified that defendant at no time requested counsel.

Defendant testified at trial that he was with friends at the 1211 Lewerenz Street address watching football and playing video games on the day and evening of the shooting, and that he was threatened, lied to, and coerced by the police into making the statement he made to Sgt. Lovier. Defendant testified that the police told him that they had spoken to his alibi witnesses and that they were not backing him up, that "Lucky" had told them he was involved in the shooting, and that Wanda Carroll had told the police that he (Harper) borrowed her car the day of the drive-by and did not return it until the next day, and that he (Harper) was going down for murder. Defendant testified that he told the first two sets of officers that interviewed him the truth, that he was not involved in the shooting at 232 South Military, that he was not permitted to make any phone calls and was taken to a cell until the next day, and that the next day the police told him they found his fingerprints in Wanda's car, told him that everyone was pointing the finger at him (Harper), including Lucky and Wanda, and that he was going to get the death penalty. Defendant testified that the officers told him that he could save himself a lot of trouble if he would just say that Lucky did it. Defendant testified that he gave the statement implicating himself and

5

> Lucky for those reasons and because he was scared, because Lovier told him he was going to be somebody's boyfriend in prison, and because they told him that his alibi witnesses were all "downstairs" and their statements were not consistent with his.

*Harper I*, 2003 WL 21299927, at *1-2, slip op. at 1-2, 8 (footnotes omitted).

At trial, petitioner was precluded from introducing alibi evidence based on his failure to provide proper notice of his alibi witnesses in accordance with MICH. COMP. LAWS § 768.20.

After trial, in connection with his appeal of right, petitioner moved for and received an evidentiary hearing in the trial court on his claim of ineffective assistance of appellate counsel. First to testify at the hearing was Dennis O'Neill, petitioner's trial counsel. O'Neill testified that petitioner had informed him that he was somewhere else at the time of the crime and gave him the names of four individuals who could provide alibi evidence. O'Neill interviewed two of the witnesses. He prepared a notice of alibi and served it on the prosecutor, but did not give the witnesses' addresses. He also did not prepare a proof of service. O'Neill testified that he did not abandon the alibi defense as a matter of strategy; rather, the decision was forced on him by the trial court's ruling precluding alibi evidence. *See* Ginther Hr'g Tr., dated 4/27/01, at 5-20.

Michelle Selonke testified that she was prepared to testify at trial on petitioner's behalf, and that she informed O'Neill of this fact. *See id.* at 36-37. She testified that on the date of the murder, she was at a house at 1211 Lewerenz Street. A number of other people were there. She and petitioner made tacos. Selonke left for about 45-90 minutes at about 4:00 in the afternoon. It was just starting to get dark when she got back from the store. To her knowledge, petitioner did not leave the house. *See id.* at 41-45. Larry Walters, petitioner's cousin, also testified that he was at the home on Lewerenz Street on the day of the murder. Petitioner was at the house all day playing a video game. He did not specifically recall the date of the murder, however. *See id.* at 46-53.

Petitioner also presented the testimony of Angelo Talley, who testified that he and petitioner were playing video games at the Lewerenz Street house all day on the date of the murder. Talley testified that he stayed at the house until 3:00 or 4:00 in the morning, and did not see petitioner leave at all. On cross-examination, Talley testified that he couldn't be sure what day of the week it was, because he and petitioner were often at the house. He also testified that he was outside during some of the day, although he did not leave the area of the house. *See id.* at 53-65. Finally, Toynette Sartor, petitioner's girlfriend, testified that she was at the house with petitioner on the date of the murder. Petitioner was already there when she arrived at about 6:00 in the evening. Petitioner did not leave the house during the time she was there. She left at about 9:00 to get petitioner some clothes, and returned about 15-20 minutes later. Petitioner was there when she got back. She stayed for another 20 minutes or so, and when she left petitioner was getting into the shower. *See id.* at 65-73.

Following the hearing, the trial court entered an order denying petitioner's motion for new trial. First, the court found that counsel's failure to timely file a notice of alibi was a strategic maneuver. Second, with respect to prejudice, the court reasoned:

> Even if defense counsel's performance regarding the alibi witness[es] was objectively unreasonable, defendant was not prejudiced by counsel's conduct. As the trier of fact, this Court finds no basis to conclude that if defendant's alibi had been presented, defendant would not have been found guilty.
> As a result of conducting a **Ginther** hearing, this Court does not believe that defendant's alibi witnesses corroborated defendant's defense and/or offered potentially exculpatory evidence. Their testimony was inconsistent and contradictory to one another and to defendant's testimony at trial.

*People v. Harper*, No. 99-12336, at 1-2 (3d Judicial Cir. Ct. (Mich.) May 7, 2001) [hereinafter "Trial Ct. op."].

The Michigan Court of Appeals reversed. First, the court explained that "there is no support in the record for the trial court's determination that trial counsel's failure to file a proper alibi notice

7

was a strategic maneuver." *Harper I*, 2003 WL 21299927, at *3, slip op. at 9. The court of appeals explained that counsel testified at the hearing that he had contacted only two of the four witnesses whose names had been given to him by petitioner, and had provided no reason for failing to file a proper notice of alibi. *See id.*, slip op. at 10. With respect to prejudice, the court of appeals

> disagree[d] with the trial court's conclusion that the alibi witnesses did not support defendant's version. They testified at the *Ginther* hearing that they did not notice defendant go out at any time. Defendant testified that he *may* have left the house once, to walk to the store at the end of the block to get a cigar, that it would have been in the evening, after the football game was over, and that he was gone about 10 minutes. There was testimony that the game was over around 4 p.m. The drive-by shooting on South Military Street occurred around 7:30 p.m.
>     The alibi witnesses' testimony placed defendant at 1211 Lewerenz during the time the drive-by shooting occurred. The identification of the car as being involved was contradictory, given Madden's prior insistence that the car was a Ford Tempo, and there was no other evidence, except defendant's statement, linking him to the offense.

*Id.* at *3-*4, slip op. at 10.

On the prosecutor's application for leave to appeal, the Michigan Supreme Court reversed, concluding that petitioner had "not demonstrated a reasonable probability that, but for his counsel's failure to perfect an alibi defense, the result of the proceeding would have been different." *Harper II*, 469 Mich. at 978, 673 N.W.2d at 752. On remand, the Michigan Court of Appeals considered and rejected petitioner's remaining claims, and the Michigan Supreme Court denied petitioner's subsequent application for leave to appeal.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.  *Ineffective Assistance of Counsel (Claims I-IV)*

Petitioner argues that his trial counsel rendered constitutionally deficient performance in a number of respects. Specifically, he contends that counsel was ineffective for (1) failing to properly

10

notice his alibi witnesses; (2) failing to correct the trial court's misapplication of the notice statute; (3) introducing polygraph evidence; and (4) failing to object to prior bad acts evidence. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

      1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

    2.    *Failures Regarding Alibi Witnesses (Claims I & II)*

Petitioner first challenges his counsel's handling of the alibi witnesses. Petitioner argues that counsel was ineffective for failing to properly notice these witnesses for trial, and for failing to correct the trial judge's erroneous conclusion that she had no discretion to allow the alibi witnesses notwithstanding the lack of proper notice. At the outset, it is important to note two things which are not at issue in these claims. First, the adequacy of counsel's performance under the first prong of the *Strickland* test is not at issue. The Michigan Court of Appeals found that counsel's performance was deficient, and the Michigan Supreme Court did not disturb this finding. And respondent makes no argument that counsel's handling of the alibi witness issues was constitutionally adequate. These issues thus focus on the second prong of the *Strickland* test, prejudice. Second, with respect to the prejudice prong, the issue is not whether the Michigan Court of Appeals or the Michigan Supreme Court was correct, nor whether this Court believes there was prejudice. Rather, under § 2254(d) the only question is whether the Michigan Supreme Court's finding of no prejudice was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Under this standard, the Court should conclude that petitioner is not entitled to habeas relief.

Two factors support the trial court's conclusion, ultimately accepted by the Michigan Supreme Court, that petitioner was not prejudiced by the absence of the alibi witnesses. First, the alibi witnesses did not provide a complete alibi which precluded petitioner's participation in the murder. The murder occurred on Sunday, November 21, 1999, after a Detroit Lions football game which some of the witnesses referenced, and petitioner was arrested on the following day. The

12

murder occurred at about 7:30 p.m., at a house about eight blocks away from the house where petitioner was seen by the alibi witnesses. Yet Walters and Talley testified that the murder occurred on a Friday, *see* Ginther Hr'g Tr., at 52, 62, and Walters insisted that petitioner was arrested on the day of the murder, *see id*. at 52. Talley also testified that there were periods during the day in which he was outside of the house, and thus he could not have been sure that petitioner was still inside. *See id*. at 62. Selonke testified that she left sometime after the football game for about 45-90 minutes, but was not sure of the exact time she left or exactly how long she was out. *See id*. at 44. Sartor's testimony came closest to providing a complete alibi. She testified that she arrived at the house at 6:00 and left at 9:00, and that petitioner did not leave during this time. However, she also testified that she stayed at the house for about 1½-2 hours, leaving a one hour gap in her testimony. *See id*. at 67-68. Sartor also could not testify without having her recollection refreshed by an affidavit signed well after the date of the murder. *See id*. at 66. It was undisputed at trial that petitioner had spent most of the day at the house on Lewerenz Street; the only question was whether petitioner was there at the time the murder occurred eight blocks away. None of the proposed alibi witnesses was able to definitively testify that petitioner was in the house on the date and at the time of the murder, and thus petitioner cannot establish prejudice by their absence at trial. *See Fargo v. Phillips*, 58 Fed. Appx. 603, 607-08 (6th Cir. 2003); *White v. Kapture*, No. 00-73974-DT, 2001 WL 902500, at *8 (E.D. Mich. June 26, 2001) (O'Meara, J.); *Thomas v. Newland*, No. C-96-0547, 1999 WL 66520, at *3-*4 (N.D. Cal. Feb. 2, 1999); *United States ex rel. Emerson v. Gramley*, 902 F. Supp. 143, 147 (N.D. Ill. 1995).

Second, and more fundamentally, the trial court reasonably concluded that the alibi witnesses were simply not credible because their testimony was contradictory. As noted above, none of the

witnesses could recall the date of the murder, and two of the witnesses affirmatively identified the wrong day of the week. Selonke testified that she remembered the day of the murder because she cooked tacos on that day, *see* Ginther Hr'g Tr., at 44, yet petitioner testified that Selonke made tacos on the following day–that is, the day he was arrested, *see* Trial Tr., Vol. IV, at 15. Further, at trial petitioner testified as to who was in the house on Lewerenz Street on the date of the murder, but failed to mention his girlfriend, Sartor. *See id*. at 11. Finally, and most importantly, the witnesses' testimony that petitioner did not leave the house at all was belied not only by petitioner's confession to the police, *see* Trial Tr., Vol. III, at 73-75, but also by petitioner's own testimony at trial, *see id*., Vol. IV, at 11. In short, there was ample basis for the trial court to conclude that the alibi witnesses' "testimony was inconsistent and contradictory to one another and to defendant's testimony at trial." Trial. Ct. op., at 2. It was thus not unreasonable for the Michigan Supreme Court to conclude that petitioner had failed to establish prejudice from counsel's performance. This conclusion is buttressed by the fact that the trial judge, who sat as the finder of fact, concluded that the testimony provided at the evidentiary hearing would not have altered her verdict. *See Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002); *Robinson v. Wolfenbarger*, No. 04-CV-70929, 2006 WL 897333, at *3 (E.D. Mich. Apr. 5, 2006) (Tarnow, J.).

      3.      *Introduction of Polygraph Evidence (Claim III)*

Petitioner next claims that counsel was ineffective for eliciting testimony from him that he had passed a polygraph examination. In response to this testimony, the prosecutor called the polygraph examiner as a rebuttal witness. The examiner testified that petitioner had, in fact, failed the examination. Petitioner argues that, but for counsel's direct examination of him, this rebuttal evidence would not have been admissible. The Michigan Court of Appeals rejected petitioner's

14

argument that counsel should have examined the examiner's report because no such report was prepared, and concluded that counsel's decision was reasonable in light of petitioner's statements to counsel and the defense presented. *See Harper III*, 2004 WL 1335834, at *1, slip op. at 2. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner cannot show that counsel's performance was deficient or that he was prejudiced by counsel's performance. Petitioner told counsel that he had passed the examination, and counsel was entitled to rely on petitioner's statement to him. *See Strickland*, 466 U.S. at 691. Further, counsel argued that the police had fabricated petitioner's involvement in the crime, highlighting that the eyewitness's description of the car had changed to match the description of the car ultimately recovered by the police and that the circumstances of petitioner's confession rendered that confession unreliable. *See* Trial Tr., Vol. IV, at 97-100. Consistent with this theory, counsel elicited from the polygraph examiner that there was no objective measure of "failure," that "failure" on the polygraph examination could be based on a "failure" with respect to a single question, and that the questions were improperly worded. *See id.* at 72-80. Further, the prosecutor elicited from the examiner on direct examination that polygraph tests are not reliable and thus generally not admissible, *see id.* at 71-72, and indicated to the trial judge that he was not seeking admission of the polygraph results as substantive evidence of guilt but had presented the testimony of the examiner solely to impeach petitioner's credibility with respect to his testimony regarding the circumstances of the interrogation, *see id.* at 84-85. The possibility of prejudice in these circumstances is minimal because "a trial judge acting as the finder of fact is presumed to have followed the law and relied only upon the evidence presented in rendering a verdict." *Matthews v. Abramajtys*, 92 F. Supp. 2d 615, 642 (E.D. Mich. 2000) (Tarnow, J.); *accord Harris v. Rivera*, 454 U.S. 339, 346 (1981); *United*

*States v. Watson*, 87 F.3d 927, 930 (7th Cir. 1996); *United States v. Cardenas*, 9 F.3d 1139, 1155-56 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    4.    *Failure to Object to Bad Acts Evidence (Claim IV)*

Petitioner finally claims that counsel was ineffective for failing to object to the prosecutor's introduction of evidence of his drug dealing activities. However, the Michigan Court of Appeals found that the evidence was properly admitted to show motive, and that the evidence was not barred by the prosecution's failure to give notice of the evidence prior to trial. *See Harper III*, 2004 WL 1335834, at *2, slip op. at 2-3. Indeed, counsel for petitioner's co-defendant did object to this evidence, and her objection was overruled by the trial court. *See* Trial Tr., Vol. II, at 145-46, 148. Thus, any objection by counsel would have been meritless, and counsel was not ineffective for failing to raise a meritless objection. *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Evidentiary Claim (Claim V)*

In his final claim, petitioner argues that he was denied a fair trial by the introduction of evidence that prosecution witness Robert Madden, the only eyewitness to the crime, was threatened. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

    1.    *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2. *Analysis*

Madden testified that he heard from people in the neighborhood that, if he testified, he would be killed. He also testified that his son was beaten up in prison and threatened with death if Madden testified. *See* Trial Tr., Vol. II, at 44-45. The Michigan Court of Appeals rejected petitioner's claim. The court reasoned that although the evidence was not admissible to show petitioner's consciousness of guilt because there was not testimony regarding who made the threats, it was admissible for the limited purpose of explaining why Madden told the attorney of petitioner's co-defendant that the co-defendant was not involved. The court also explained that, because petitioner received a bench trial, the trial judge could be presumed to have considered the testimony for the limited purpose for which it was offered. *See Harper III*, 2004 WL 1335834, at *3, slip op. at 3. The Court should conclude that this determination was reasonable.

Petitioner challenges the admissibility of this evidence to show petitioner's consciousness of guilt and the prejudicial impact of the evidence. However, petitioner offers no argument to challenge the court of appeals's conclusion that the evidence was properly admissible to explain Madden's prior inconsistent statement regarding the co-defendant's involvement in the crime. And, as noted above, because petitioner was convicted in a bench trial, this Court should presume that the trial judge considered the evidence solely for the limited purpose for which it was admitted. *See Harris*, 454 U.S. at 346; *Matthews*, 92 F. Supp. 2d at 642. Accordingly, petitioner was not denied a fair trial by the introduction of this evidence.

F.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny

petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                         s/Paul J. Komives
                                         PAUL J. KOMIVES
                                         UNITED STATES MAGISTRATE JUDGE
Dated: 6/14/07

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on June 14, 2007.
>
>        <u>s/Eddrey Butts</u>
>        Case Manager